902 F.2d 33
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth H. DOLE, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellant,
v.
HOPPLE PLASTICS, INC.; John Kelly, Individually and as
President of Hopple Inc.; John Hopple,
Individually and as Owner of Hopple
Plastics, Inc., Defendants-Appellees.
 No. 89-5696.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1990.
 
 Before MILBURN and ALAN E. NORRIS, Circuit Judges; CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The Secretary appeals from a dismissal of a suit brought by the Department of Labor on behalf of Beverly E. Davis, alleging that her employer, Hopple Plastics, Inc., violated a provision of the Consumer Credit Protection Act, 15 U.S.C. Sec. 1674(a), when it discharged Davis because her wages were being garnished. The district court dismissed the complaint as barred by the doctrine of laches. For the reasons stated, we reverse and remand the case to the district court.
 
 I.
 
 2
 In 1983, Beverly Davis vacated her apartment with a few months remaining on the term of her lease. Her landlord kept her deposit and sued her for the remaining rent, obtaining a judgment for $269.50 plus court costs. To satisfy the judgment, the landlord garnished her wages, sending two notices to her employer, Hopple Plastics, Inc., in the spring of 1985. After each notice, Hopple informed Davis that, because of the administrative difficulty of processing garnishments into its payroll system, the company's policy was to terminate any employee against whom three garnishments were received. Concerned, Davis contacted her former landlord's attorney and attempted to arrange a payment schedule to satisfy the indebtedness and to avoid another garnishment, but no agreement was reached.
 
 
 3
 Hopple received a third notice of garnishment on April 7, and Davis was discharged on April 10, 1985. Two years and eight months later, Davis learned from a relative that Hopple's action might have been illegal. The following day, December 7, 1987, she filed a complaint with the Wage-Hour division of the Department of Labor ("DOL"). Officials from the DOL investigated the claim and attempted to negotiate a settlement with Hopple, but the company refused to supply any information or participate in any informal negotiations.
 
 
 4
 Four months after Davis filed her complaint, the DOL filed suit against Hopple alleging that its discharge of Davis violated 15 U.S.C. Sec. 1674. The government sought an injunctive order against Hopple to cease further discharges based on its garnishment policy, and sought reinstatement and restitution of three years of lost wages for Davis. Hopple filed a Fed.R.Civ.P. 12(b)(6) motion to dismiss, arguing that the action was time-barred by a Kentucky statute of limitation.
 
 
 5
 At a hearing on the motion, Hopple indicated it would agree to a consent decree enjoining it from future terminations, but argued that Davis' reinstatement and restitutionary relief was barred by an analogous Kentucky statute of limitation and the equitable doctrine of laches. No evidence of inordinate delay or undue prejudice was offered, however, other than the admitted fact that three years passed between the discharge and the filing of the suit. The district court accepted the consent decree but dismissed the claims for reinstatement and backpay concluding the claims were barred by laches.
 
 II.
 
 6
 Concerned about the correlation between wage garnishments and personal bankruptcies, Congress passed subchapter II of the Consumer Credit Protection Act in 1968 limiting the percentage of an employee's wages which can be subjected to garnishment. 15 U.S.C. Sec. 1671 et seq. See H.R.Rep. No. 1040, 90th Cong., 2d Sess. 20-21, reprinted in, 1968 U.S.Code Cong. & Admin.News 1962, 1977-79. The Act also provides that "[n]o employer may discharge any employee by reason of the fact that his earnings have been subjected to garnishment for any one indebtedness." 15 U.S.C. Sec. 1674(a). In section 1676, Congress authorized the Secretary of Labor to enforce the provisions of the subchapter. Section 1676 is an express grant of power to the Secretary of Labor to sue and seek reinstatement on behalf of an employee wrongfully discharged due to garnishment of his wages. Hodgson v. Consolidated Freightways, Inc., 503 F.2d 797, 798 (9th Cir.1974).
 
 
 7
 Hopple opposed the claims for backpay and reinstatement on the ground that the action was time-barred by an analogous one-year state statute of limitation. The government responded that the government was suing in its sovereign capacity and was not subject to time limitation defenses. See United States v. Summerlin, 310 U.S. 414, 416-17 (1940). Citing Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 373 (1977), the district court concluded that it retained the equitable power to "locate a just result." Relying upon the equitable doctrine of laches, the court denied backpay and reinstatement because it considered the three years between Davis' discharge and the filing of the suit an inordinate delay.
 
 
 8
 In Occidental, the Supreme Court held that, although Congress had not included a period of limitation in the Civil Rights Act of 1964, state statutes of limitation do not apply to actions filed against private employers by the Equal Employment Opportunity Commission to enforce provisions of Title VII of that Act. It was recognized that "[w]hen Congress has created a cause of action and has not specified the period of time within which it may be asserted, this Court has frequently inferred that Congress intended that a local time limitation should apply." Id. at 367 (citations omitted). But, the majority of the Court concluded that the EEOc's ability to bring suit under Title VII fell within an exception to the general rule: "State limitations will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute." Id. (citations omitted). After concluding state statutes of limitation did not apply, with the result that the EEOC was not bound by any limitation period, the majority opinion went on to point out that where a Title VII defendant has been prejudiced by unexcused and inordinate EEOC delay, federal courts still retain "discretionary power to locate a just result in light of the circumstances peculiar to this case." Id. at 373. This language served as the basis for the district court's ruling in the case before us.
 
 
 9
 Although the suit underlying the Occidental opinion included a claim for backpay, the Court did not decide the appeal on the basis that a suit by the EEOC with a claim for backpay was a suit brought by the United States in its sovereign capacity. Instead, the majority rested its holding on the conclusion that the application of state statutes of limitation would interfere with and frustrate the policies underlying Title VII. The Court explained that Title VII is unique because it charges the EEOC with resolving employment discrimination disputes administratively whenever possible, and establishes its own process and time limitations to further that purpose. Application of diverse state limitation periods, the Court said, would interfere with the EEOC's ability to resolve these disputes. This suit, of course, was not brought under Title VII by the EEOC, and the policy concerns raised by the majority in Occidental are not compelling in the lawsuit brought by the D.O.L.
 
 
 10
 Accordingly, we must resort to the traditional form of analysis to determine whether this suit for backpay brought on behalf of a private individual by the D.O.L. is a suit by the United States in its sovereign capacity.
 
 
 11
 That was the analysis the dissenters in Occidental would have relied upon to conclude that, once it is determined that the agency is not suing in the sovereign capacity of the United States, then there is no reason to exempt the suit from application of state limitations statutes. Id. at 385 (Rehnquist, J. dissenting). The case law, setting out the analysis to be utilized in determining whether a suit is being brought by the government in its sovereign capacity was set out in detail by the dissenters. Id. at 382. As applicable to this appeal, the general rule is that, where the government is "suing as a conduit for the recovery of sums due an individual citizen rather than the public treasury," the government is not suing in its sovereign capacity. Id. at 383.
 
 
 12
 The issue, then, should be parsed according to this framework: where the government files suit pursuant to federal statute, and there is no time limitation specified in the statute, the district court must first decide whether the government is suing in its sovereign capacity. United States v. Beebe, 127 U.S. 338 (1888). There, the decisive fact is whether the United States is suing to enforce its rights as sovereign. Summerlin, 310 U.S. 414 at 416 (emphasis in original). If the government is not suing in its sovereign capacity, the most analogous state statute of limitation applies, unless its application would frustrate or interfere with national policy or the policies underlying the statute (see Occidental, 432 U.S. at 367) or unless a limitation from elsewhere in federal law clearly provides a closer analogy than the available state statutes (see DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158-63 (1983)).
 
 
 13
 Even in those rare instances where neither a federal nor state limitation statute applies, federal courts still retain the power to limit or deny relief, based upon equitable principles such as laches, where a "defendant is in fact prejudiced by ... unexcused conduct" or inordinate delay. Occidental, 432 U.S. at 373. Where a statute of limitation is found to apply, however, courts of equity generally do not apply laches before the limitation period has run. See, e.g., Cleveland Newspaper Guild, Local 1 v. Plain Dealers Pub. Co., 839 F.2d 1147, 1157 (6th Cir.1988) (en banc) (Nelson, J., concurring).
 
 III.
 
 14
 Applying that framework to the case before us, we conclude that the district court erred in failing to decide whether the suit was one by the sovereign and whether an analogous state statute of limitation applies.
 
 
 15
 Although this suit was filed by the government, it is evident that the claims for backpay and reinstatement are not the kind by which the government attempts to vindicate its rights as sovereign. By filing these claims, the government is seeking only to serve as a conduit for relief due Davis as an individual citizen. Claims for backpay and reinstatement benefit an individual, not the government. The government's treasury will receive no money as a result of the suit; nor will the government vindicate its rights as sovereign or in specific property. Only in the most general sense can it be said that the public will gain where the result or the suit is compensation of a private individual, in vindication of an injury suffered by that individual.
 
 
 16
 Although private individuals cannot vindicate their section 1674(a) rights except through a government suit on their behalf,[1] the government is vindicating the rights of, and seeking relief for, the individual and not itself. We conclude that claims for backpay and reinstatement brought by the government on behalf of an individual in a suit under 15 U.S.C. Sec. 1674(a) are not claims of the sovereign, and are therefore subject to time limitation defenses. We express no opinion as to the claim for injunctive relief since the issue is not before us.
 
 
 17
 The next step is to determine which, if any, of Kentucky's statutes of limitation should apply to a section 1674(a) suit. The government has not identified any weighty national policy in such a suit which would be frustrated by the application of a state statute of limitations, or which would outweigh the public policy supporting statutes of limitation. Nothing in the legislative history of the Act leads us to believe Congress intended to shield these actions from state limitation periods.
 
 
 18
 Hopple argues that, rather than being frustrated by the application of a state statute of limitation, national labor policy dictates that labor grievances be settled quickly. It contends that a short limitations period should be adopted and analogizes a section 1674 action to an action brought under 42 U.S.C. Sec. 1983, which would be subject to Kentucky's one-year limitation for personal injuries. See Wilson v. Garcia, 471 U.S. 261 (1985); Owens v. Okure, 488 U.S. ---- (1989). However, it appears that the "most analogous" state statute of limitation is the limitation Kentucky would apply to an action arising under state law from the facts of this case.
 
 
 19
 Kentucky has prohibited discharges due to garnishment in statutory language identical to that of 15 U.S.C. Sec. 1674 (see Ky.Rev.Stat.Ann. Sec. 427.140 (Baldwin 1987)), but has not expressly created a cause of action for violations of the statute or specified an applicable statute of limitations. In Firestone Textile Co. v. Meadows, 666 S.W.2d 730 (Ky.1983), however, the Kentucky Supreme Court indicated that an employee had a common law action for wrongful discharge "when the discharge is contrary to a fundamental and well-defined public policy" which "must be evidenced by a constitutional or statutory provision." Id. at 731 (citation omitted). Since Kentucky has a statutory provision prohibiting discharges due to garnishment, it appears Davis could have brought a common law wrongful discharge action based upon the statutory prohibition against discharge due to garnishment.
 
 
 20
 A Kentucky statute provides a residual five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability." Ky.Rev.Code Ann. Sec. 413.120(2) (Baldwin 1987). Kentucky courts have applied this provision to common law wrongful discharge actions based upon a statutorily declared right or policy. See, e.g., Pike v. Harold (Chubby) Baird Gate Co., 705 S.W.2d 947, 948 (Ky.App.1986). Because Kentucky presumably would apply this five-year limitation in an action for wrongful discharge due to a garnishment, the most analogous state statute of limitation for purposes of this federal suit is the five-year statute. As the secretary's suit was filed on April 7, 1988, within three years of her discharge on April 10, 1985, the action is therefore not barred by the analogous state limitation.
 
 IV.
 
 21
 The district court relied upon the equitable doctrine of laches to dismiss the suit. The defense of laches requires proof of both inordinate delay and undue prejudice. Costello v. United States, 365 U.S. 265, 282 (1961); Brown v. County of Buena Vista, 95 U.S. 157 (1877). While both the doctrine of laches and statutes of limitation prevent the prosecution of stale claims, laches is more flexible, in the sense that the Supreme Court has repeatedly emphasized "[t]hat no arbitrary or fixed period of time has been, or will be, established as an inflexible rule, but that the delay which will defeat such a suit must in every case depend on the peculiar equitable circumstances of that case." The Key City, 81 U.S. (14 Wall.) 653, 660 (1871). And, as we have noted, laches will not ordinarily apply before a limitations period has run. Cleveland Newspaper Guild, 839 F.2d at 1157 (Nelson, J., concurring).
 
 
 22
 The only evidence of inordinate delay or undue prejudice proffered by defendant was the fact that three years passed between Davis' discharge and the filing of the suit. Alone, that evidence is insufficient to support denial of relief, particularly in light of the suit having been filed within the applicable state period of limitation. In determining what qualifies as inordinate delay, the court should have considered, as an equitable circumstance, that the existence of this cause of action was not readily apparent to the discharged employee. See 2 J. Pomeroy, Equity Jurisprudence Sec. 419d, at 179 (Symons 5th ed. 1941) (laches should be applied when one "knowing of his rights ... takes no steps to enforce them") (emphasis added).
 
 
 23
 The district court expressed its concern that employees with section 1674 claims should not be entitled to sit on their rights and let damages from backpay accumulate. A court is not powerless to limit relief where equity so requires. In the appropriate case, plaintiffs' failure to mitigate damages, or their failure to provide timely notice of their potential claim to allow the employer to mitigate damages, may be grounds for limiting relief under principles of equity.
 
 V.
 
 24
 Accordingly, the judgment of the district court dismissing this action is reversed and the cause is remanded to the district court for proceedings according to law and consistent with this opinion.
 
 
 25
 CONTIE, Senior Circuit Judge, concurring.
 
 
 26
 I concur with the result of the majority opinion that the case should be remanded for a determination of prejudice under the doctrine of laches. However, I write separately because I believe that under Occidental Life Ins. Co. v. EEOC, the applicable five-year Kentucky statute of limitations, Ky.Rev.Stat. Sec. 413.120(2), should not be adopted for a violation of 15 U.S.C. Sec. 1674 because it violates a strong federal policy in favor of prompt notification to the employer in employer-employee disputes. The Supreme Court in Occidental found that in an EEOC action, absorption of a one-year state statute of limitations would give the EEOC too short a time to pursue its claim and that an employer's concern with timely notice of the charges made against him is provided by the procedural protections of the Act, which require that a charge must be filed with the EEOC within 180 days of the occurrence of the allegedly unlawful practice. Occidental, 432 U.S. 355, 371-72 (1977). There is no comparable time constraint in 15 U.S.C. Sec. 1674 within which an employee must notify the Department of Labor of an alleged unlawful termination due to garnishment on a single indebtedness. Therefore, an employer's concern with timely notice is not protected under 15 U.S.C. Sec. 1674 as it is under the EEOC. In the present case, the analogous Kentucky statute of limitations, which allows five years for a private individual to file a state claim for being fired because of garnishments on a single indebtedness, does not comport with federal policy, which favor prompt notification of an impending wrongful discharge dispute to the employer. The Supreme Court in Occidental stated, "State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." Occidental, 432 U.S. at 367. Under federal laws regarding employer-employee disputes, one year is the longest amount of time in which the employer will be notified either by the filing of the complaint or notification by the appropriate federal agency of the impending charge. I believe that in the present case importation of the state statute of limitations, which would allow five years to file a claim for violation of a federal statute that provides no procedural protections for notification to the employer, would violate federal policy and therefore should not be adopted. Under Occidental, the court may instead "locate a just result" by applying the doctrine of laches. Id. at 373. For these reasons, I find it unnecessary to decide whether a suit under 15 U.S.C. Sec. 1674 is a suit by the United States in its sovereign capacity.
 
 
 
 [1]
 Three circuits have concluded that section 1674 does not provide a private implied cause of action. Smith v. Cotton Bros. Baking Co., 609 F.2d 738, 742-43 (5th Cir.), cert. denied, 449 U.S. 821 (1980); McCabe v. City of Eureka, 664 F.2d 680, 682 (8th Cir.1981); LeVick v. Skaggs Cos., Inc., 701 F.2d 777, 779-80 (9th Cir.1983) (expressly overruling Stewart v. Travelers Corp., 503 F.2d 108 (9th Cir.1974)). The Sixth Circuit has found no implied right of action under 15 U.S.C. Sec. 1664, enacted under subchapter I of the Act, but has expressed no opinion as to subchapter II, which contains section 1674. See Smeyres v. General Motors Corp., 660 F.Supp. 31 (N.D.Ohio 1986), aff'd, 820 F.2d 782 (6th Cir.1987). Judge Contie has expressed his view that no private cause of action exists under subchapter II in a dissenting opinion in Agg v. Flanagan, 855 F.2d 336, 345 (6th Cir.1988). The majority in Agg did not reach the issue